**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TARA McGUIGAN BYWATER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| | ) | File No. 1:13-cv-4415 |
| v. | ) | |
| WELLS FARGO BANK, N.A., LPS FIELD | ) | |
| SERVICES, INC., AND A-SON'S | ) | JURY TRIAL DEMANDED |
| CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## COMPLAINT

**NOW COMES** the Plaintiff, TARA McGUIGAN BYWATER, by and through her

attorneys, SULAIMAN LAW GROUP, LTD., complaining of Defendants, WELLS FARGO

BANK, N.A., LPS FIELD SERVICES, INC., and A-SON'S CONSTRUCTION, INC.

(collectively referred to as "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff Tara McGuigan Bywater ("Tara") brings this action against Defendants for

damages resulting from trespass, conversion, intrusion upon seclusion, breach of contract, and

violations of the Illinois Consumer Fraud Act and the Fair Debt Collection Practices Act.

2. All of the claims stated herein stem from the damage, destruction, and the illegal entry

upon Tara's real property by Defendants without her authorization or consent.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337,

as the action arises under the laws of the United States.

1

4.   Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00, and is between citizens of different states.

5.   The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Tara resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions occurred in this District.

PARTIES

7.   Plaintiff TARA is a natural person over 18-years-of-age who currently resides at 929 N. Dunton Ave., Arlington Heights, IL 60004. At all times relevant to the causes of action, Tara also owned and resided in a single family home located at 14053 S. Oakdale Circle, Plainfield, Illinois 60544.

8.   Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is a banking institution with its principal place of business in California. Wells Fargo is a foreign corporation authorized to do business in Illinois and is in the business of servicing loans across the country, including in the state of Illinois.

9.   Defendant LPS FIELD SERVICES, INC. ("LPS") is a privately held field services company with its principal office in San Francisco, California. LPS is a foreign corporation authorized to do business in Illinois and is in the business of providing home preservation services to companies that provide mortgage financial services to Illinois residents.

10. Defendant A-SON'S CONSTRUCTION ,INC. ("Asons") is a privately held field services with its principal office in Muncie, Indiana. Asons is a foreign corporation authorized to

do business in Illinois and is in the business of providing home preservation services to companies that provide mortgage financial services to residents of Illinois.

### GENERAL ALLEGATIONS

11. On March 20, 2009, Tara executed a mortgage and note ("subject loan") in favor of Franklin American Mortgage Company in the amount of $168,144.00 for the purchase of her home located at 14053 S. Oakdale Circle, Plainfield, IL ("subject property").

12. At some point after its origination, Wells Fargo purportedly acquired servicing rights and ownership of the subject loan.

13. Tara has two young daughters, ages 9-years-old and 7-months-old. From April 2009 to January 2013, Tara exclusively resided at the subject property. Tara married Matt Bywater ("Matt") in March 2013.

14. In February or March 2013, Wells Fargo issued a work order directing its home preservation services company, LPS, to investigate, winterize, change the locks, and commit additional undertakings at the subject property. Wells Fargo and LPS have a principal/agent relationship.

15. After receiving the work order from Wells Fargo, LPS initiated a process whereby various subcontractors bid to complete home preservation tasks for the subject property as directed by Wells Fargo through LPS.

16. Asons won the bid to provide services at the subject property for both LPS and Wells Fargo. Asons has since claimed that it hired its own subcontractor to complete the work order. Asons has refused to provide the name of its purported subcontractor (hereinafter Asons and any of its subcontractors will be referred to collectively as "Asons"). LPS and Asons have a principal/agent relationship.

17. On March 2, 2013, Asons forcibly entered the subject property, changed the locks, damaged the real estate and other personal property therein, and stole personal items from the subject property.

18. Among the items that Asons stole from the subject property were the following:

   a.  the locks;

   b.  stereo;

   c.  GE stainless steel microwave;

   d.  Apple iPhones;

   e.  paper shredder;

   f.  DVDs;

   g.  jewelry box;

   h.  3 rings;

   i.  pair of diamond earrings;

   j.  pair of Tiffany earrings;

   k.  lock of hair from daughter's first haircut;

   l.  bin of electronics with phone chargers, computer chargers, and an iPod docking station;

   m.  2 laptops;

   n.  printer;

   o.  gift cards;

   p.  26 inch flat screen television;

   q.  Nintendo Wii and games;

   r.  Nintendo Gameboy and games; and

   s.  Nintendo DS and games.

19. Among the items that Asons damaged, destroyed, or discarded from the subject property were the following:

    a.  all packed boxes dumped and ransacked;

    b.  items in cabinets dumped onto counters and the floor;

    c.  closet door to the furnace/water heater area ripped off tracks and thrown into garage;

    d.  three (3) vases broken;

    e.  electronics broken;

    f.  dishwasher disconnected and attachments ripped out;

    g.  chair ripped apart; tear in fabric and cushion taken off;

    h.  cover to thermostat taken off;

    i.  gas shut off;

    j.  laundry room door ripped off track;

    k.  washer and dryer taken out of wall and put into baby's room, floor damaged from dragging;

    l.  Roman blinds ripped off the windows;

    m.  shower curtains ripped out, shower rods broken, and shower heads broken;

    n.  multiple CDs and CDs containing family pictures damaged or stolen;

    o.  daughter's baby book damaged;

    p.  daughter's pictures ripped off mirror and her bath rings thrown into garbage can;

    q.  daughter's desk flipped over and desk chair shoved into closet;

    r.  all boxes containing daughters' items dumped and ripped up;

    s.  multiple toys damaged;

    t.  bin of daughters' crafts dumped all over room;

    u.  daughters' baby basinet flipped over and damaged;

    v.  attachments to washer and dryer thrown into the baby basinet;

    w.  framed photographs and artwork damaged; and

    x.  daughters' school projects damaged.

20. Aside from the locks being changed, there were no signs of forced entry at the subject property.

21. At no point in time did any of the Defendants contact Tara to ascertain whether she resided at the subject property, or to receive her authorization to enter the subject property.

22. At no point in time did any of the Defendants obtain a court order granting them possession of the subject property.

23. On March 26, 2013, Tara reported the incident to the Will County Sheriff's Department.

24. On March 27, 2013, a day after Tara filed the police report, Wells Fargo filed a mortgage foreclosure complaint against Tara seeking foreclosure of the subject property.

25. Despite Tara's demands, Defendants have failed to return, replace or pay her the reasonable value of her property.

### TARA'S DISCOVERY OF DEFENDANTS' ACTIVITIES

26. Beginning in February 2013, Tara and her daughters slowly began moving from the subject property to Matt's residence.

27. Tara contacted a real estate agent to list the subject property for sale. Tara and Matt began packing boxes and cleaning the subject property to prepare for the forthcoming showings.

28. From February to March 2013, Tara and Matt were regularly present at the subject property.

29. On March 3, 2013, around 11:00 a.m., Tara received a text message from her neighbor Kim letting her know that there was a suspicious white van in Tara's driveway and what appeared to be a work crew. Kim said that some of the men were peeking through Tara's windows.

30. As a result of the text message, Matt went to the subject property that same day to find the locks had been changed. Matt called Tara to tell her that the keys no longer worked in the

locks and that there were signs posted at the subject property to contact LPS in case of an emergency. There were no signs of forced entry.

31. On March 3, 2013, Tara called the number on LPS's signs and got an answering service. She left a message. Tara did not get a return call.

32.  Tara then called Wells Fargo. The Wells Fargo representative said that someone would be out to investigate the work performed on the subject property and get back to her about the locks being changed. Tara did not hear back from the Wells Fargo representative as promised.

33. Later, Tara got a call from LPS who said that they would discuss everything with Wells Fargo. Tara replied that the subject property was not in foreclosure and that most of her belongings had been locked inside. The LPS representative told Tara to contact Wells Fargo for more information.

34. Sometime thereafter, Tara received a package containing the new keys to the subject property.

35. Tara went to the subject property with the  new keys on Saturday, March 23, 2013, for an appointment with the real estate agent for the purposes of listing the subject property for sale.

36. When Tara arrived at the subject property with the replacement keys, Tara found the subject property destroyed. After seeing the condition of the subject property, Tara immediately canceled her appointment with her real estate agent.

37. The subject property was completely ransacked. All of the boxes that Tara and Matt had packed up to move were opened with their contents dumped onto the floor or stolen.

38. All of Tara's valuable belongings were stolen or damaged.

39. Tara once again contacted LPS to report the incident. LPS took down her information and denied any wrongdoing. LPS told her that they were directed to do everything by Wells Fargo.

40. Before the incident, the subject property had been well-maintained, in good condition, and fully secured.

41. On March 26, 2013, Tara called the Will County Sheriff's Department to report the incident.

42. One day after Tara reported the incident to the police, Wells Fargo filed foreclosure of the subject property in *Wells Fargo Bank, N.A. v, Tara M. McGuigan,* Case No. 13 CH 01261, Will County, Illinois.

43. Tara hired Sulaiman Law Group, Ltd. LPS advised Sulaiman Law Group, Ltd. that Asons was responsible for the damage done to the subject property, as LPS had accepted Asons' bid for the work order issued by Wells Fargo.

### CAUSES OF ACTION

44. Wells Fargo had a consensual, fiduciary relationship with both Asons and LPS where Wells Fargo had the right to control the activities of both Asons and LPS, and both Asons and LPS had the authority to act on behalf of Wells Fargo.

45. Wells Fargo had the right to control the manner and method in which Asons and LPS came in contract with, entered, and altered the subject property.

46. LPS had a consensual, fiduciary relationship with Asons whereby LPS had the right to control the activities of Asons, and Asons had the authority to act on behalf of LPS.

47. LPS had the right to control the manner and method in which Asons came in contract with, entered, and altered the subject property.

48. LPS as the principal of Asons is liable for the acts of Asons.

49. Wells Fargo as the principal of LPS is liable for the acts of LPS and Asons.

50. Wells Fargo, LPS, and Asons are liable for any activity that was conducted at the subject property by subcontractors acting on their behalf, as their agent, under their supervision, or at their direction.

### COUNT I – TRESPASS TO REAL PROPERTY
### (ASONS, LPS, & WELLS FARGO)

51. Tara restates and realleges paragraphs 1 through 50 as if fully set forth herein.

52. At all times relevant, Tara was the owner of the subject property and had a legal right to possession of the subject property.

53. Without consent or a right to possession, Asons forcibly entered the subject property, changed the locks, disengaged the gas and heat, damaged the real property, and removed personal property.

54. Asons knew that Tara owned and occupied the subject property along with her family and Asons acted with a reckless, willful and conscious disregard for Tara's property rights.

55. Asons' forced entry and trespass upon the subject property interfered with Tara and her family's ownership, use, enjoyment, and possession of the premises.

56. Asons' forced entry and trespass upon the subject property caused Tara and her family loss and damage to property, great harm, humiliation, mental distress, and suffering.

57. It is Asons and their principals' normal business practice to ignore the possessory and ownership rights of homeowners and conduct business without obtaining a court order or searching the recorder of deeds to confirm rights to property.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

    a. Enter judgment in her favor and against all Defendants;

    b. Award Tara her actual damages in an amount to be determined at trial;

    c. Award Tara punitive damages in an amount to be determined at trial;

    d. Award Tara her reasonable attorney fees and costs; and

    e. Award any other relief this Honorable Court deems equitable and just.

### COUNT II – TRESPASS TO PERSONAL PROPERTY/CHATTELS
### (ASONS, LPS, & WELLS FARGO)

58. Tara restates and realleges paragraphs 1 through 57 as if fully set forth herein.

59. Asons unlawfully entered the subject property and assumed dominion and control over Tara's personal property and chattels without her consent and to the exclusion of her rights.

60. All of Asons' actions related to the forced entry and trespass upon the subject property caused Tara and her family loss and damage to property, great harm, humiliation, mental distress, and suffering.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

    a. Enter judgment in her favor and against all Defendants;

    b. Award Tara her actual damages in an amount to be determined at trial;

    c. Award Tara punitive damages in an amount to be proven at trial;

    d. Award Tara her reasonable attorney fees and costs; and

    e. Award any other relief this Honorable Court deems equitable and just.

**COUNT III – CONVERSION**
**(ASONS, LPS, & WELLS FARGO)**

61. Tara restates and realleges paragraphs 1 through 60 as if fully set forth herein.

62. Asons, without authority or consent, stole Tara's personal property.

63. Asons remains in unlawful possession of Tara's personal property.

64. Tara has demanded the return of her personal property from Asons.

65. Asons has made no attempt to replace or return Tara's property, nor offered to pay her the equivalent monetary value.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

     a. Enter judgment in her favor and against all Defendants;

     b. Award Tara her actual damages in an amount to be determined at trial;

     c. Award Tara punitive damages in an amount to be determined at trial;

     d. Award Tara her reasonable attorney fees and costs; and

     e. Award any other relief this Honorable Court deems equitable and just.

**COUNT IV – INTRUSION UPON SECLUSION**
**(ASONS, LPS, & WELLS FARGO)**

66. Tara restates and realleges paragraphs 1 through 65 as if fully set forth herein.

67. Tara and her family had a reasonable expectation of privacy within their home.

68. Asons intentionally and physically intruded upon the solitude and seclusion of Tara and her family's private affairs without authority or consent.

69. Asons rummaged through Tara and her children's intimate personal belongings.

70. Asons' acts of intrusion were highly offensive to Tara, her family, and like-minded reasonable individuals.

71. As a result, Tara suffered extreme emotional distress.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

   a.   Enter judgment in her favor and against all Defendants;

   b.   Award Tara her actual damages in an amount to be determined at trial;

   c.   Award Tara punitive damages in an amount to be determined at trial;

   d.   Award Tara her reasonable attorney fees and costs; and

   e.   Award any other relief this Honorable Court deems equitable and just.

### COUNT V – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (ASONS, LPS, & WELLS FARGO)

72. Tara restates and realleges paragraphs 1 through 71 as if fully set forth herein.

73. Tara is a person as defined within the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq.

74. All Defendants are engaged in commerce in the state of Illinois with regard to Tara and the subject property.

75. LPS and Asons specialize in property preservation, which is within the stream of commerce and one of the collection tools utilized by mortgage loan servicers in their regular course of business.

76. Asons broke into Tara's home and dispossessed Tara of her property without a legal or factual basis for doing so.

77. It is the regular business practice of Asons and its principals to ignore the possessory and ownership rights of homeowners prior to a foreclosure being filed or obtaining a court order for pre-judgment possession.

78. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, and showed a reckless disregard for the rights of Tara and her family.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

    a. Enter judgment in her favor and against all Defendants;

    b. Award Tara her actual damages in an amount to be determined at trial;

    c. Award Tara punitive damages in an amount to be determined at trial;

    d. Award Tara her reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

    e. Award any other relief this Honorable Court deems equitable and just.

### COUNT VI – BREACH OF CONTRACT
### (WELLS FARGO)

79. Tara restates and realleges paragraphs 1 through 78 as though fully set forth herein.

80. To prevail on a breach of contract claim under Illinois law, plaintiff must show: (a) the existence of a valid and enforceable contract; (b) substantial performance by the plaintiff; (c) a breach; and (d) resulting damages.

81. Tara has a valid and enforceable mortgage contract with Wells Fargo. *See* Exhibit A attached hereto is a true and correct copy of the mortgage.

82. Tara substantially complied with the terms and conditions of the subject note and mortgage.

**a. Wells Fargo Breached its Duty of Good Faith and Fair Dealing**

83. Wells Fargo breached its duty of good faith and fair dealing in this matter because of the torts and deceptive practices that were committed in violation of the law.

### b. Wells Fargo Breached the express terms of the Subject Mortgage and Note

84. Under the terms of the subject mortgage, Wells Fargo is required to comply with federal and state law. *Id.* at ¶ 14.

85. The subject mortgage and Illinois law require that Tara maintain exclusive possession to the subject property while she remains on title. *Id.* at ¶ 5; *see also* 735 ILCS 5/15-1701.

86. The subject mortgage required that Wells Fargo take reasonable steps to determine whether the subject property is vacant or abandoned before taking any action to protect its interest. *See* Exhibit A at ¶ 5.

87. Wells Fargo failed to take any steps to determine that Tara continued to occupy the subject property, and that the subject property was not vacant or abandoned, prior to directing LPS and Asons to enter the subject property.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

    a.  Enter judgment in her favor and against Wells Fargo;

    b.  Find that Wells Fargo materially breached the mortgage contract;

    c.  Award Tara her actual damages to be determined at trial;

    d.  Award Tara her reasonable attorney fees and costs; and

    e.  Award any other relief this Honorable Court deems equitable and just.

### COUNT VII – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
#### (ASONS, LPS & WELLS FARGO)

88. Tara restates and realleges paragraphs 1 through 87 as though fully set forth herein.

89. The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., imposes civil liability upon debt collectors.

90. Asons qualifies as a debt collector under § 1692a(6) as it uses an instrumentality of interstate commerce or the mails to collect debts and enforce security interests.

91. Asons is in the business of securing and preserving properties for mortgage lenders and others in the foreclosure industry.

92. Asons provided property preservation services for both LPS and Wells Fargo.

93. Asons arranges field services and default-related services for homes upon which Wells Fargo is seeking to collect a debt.

94. Asons acquired the authority from LPS and Wells Fargo to collect a consumer debt owed to Wells Fargo by performing property services at the subject property.

95. Asons performed all acts complained of without any right to possession of the subject property or an order from a court.

96. Asons evicted and dispossessed Tara and her family from their home without reason and without regard for her rights.

97. Asons permanently discarded and disposed of Tara's personal property, some of which can never be replaced, and damaged her real property.

### a. Violation of § 1692e

98. Asons violated § 1692e by falsely claiming that it had a right to enter, possess, and change the locks to the subject property.

### b. Violation of § 1692d

99. Asons violated § 1692d by engaging in conduct to harass, oppress, and abuse Tara in connection with the subject debt owed to Wells Fargo.

100. Asons engaged in abusive and oppressive conduct by forcibly evicting Tara and her family, and by damaging, destroying, and stealing her belongings and real property.

### c. Violation of § 1692f

101. Asons violated § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt.

102. Asons' unauthorized entry upon the subject property on behalf of Wells Fargo and LPS was in furtherance of efforts to collect debts for Wells Fargo and LPS.

103. Asons violated § 1692f(6)(A) by taking or threatening to take non-judicial action and employing self-help to dispose of property when there was no present right to possession of the property as collateral through a security interest.

104. Asons violated § 1692f(1) by seeking to collect property inspection and other corporate fees, and impose fees and costs for alterations done to property that were not expressly authorized by the subject mortgage or by Illinois law.

### d. Violation of § 1692k

105. Asons violated § 1692k by failing to maintain procedures reasonably adapted to avoid improper debt collection practices. Asons never requested a court order or checked the Will County recorder of deeds to verify rights to the subject property.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

    a. Enter judgment in her favor and against all Defendants;

    b. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    c. Award Tara statutory, actual, and punitive damages, in an amount to be determined at trial;

    d. Order the deletion of all adverse credit reporting related to the loan;

    e. Award Tara costs and reasonable attorney fees under 15 U.S.C. § 1692k; and

    f. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT VIII – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (LPS & Wells Fargo)

106.  Tara restates and realleges paragraphs 1 through 105 as though fully set forth herein.

107.  LPS qualifies as a debt collector under the FDCPA §§ 1692a(6) and 1692e(2)(A).

108.  LPS posted notifications on the subject property stating that it was vacant or abandoned and that Wells Fargo had the right to enter the subject property.

109.  After Asons changed the locks to the subject property, LPS possessed the keys and willfully restricted Tara's access to the subject property.

110.  LPS's actions were in furtherance of efforts to restrict access to the subject property and collect a debt on behalf of Wells Fargo.

### a. Violation of  § 1692d

111.  LPS engaged in abusive and oppressive conduct under § 1692d by withholding possession of the subject property, taking Tara's personal property, and damaging her real property for the purpose of collecting a debt on behalf of Wells Fargo.

### b. Violation of  §§ 1692f, e, and g(a)

112.  Wells Fargo and LPS violated §§ 1692f, e, and g(a) by reporting and assessing fees against Tara and her property that were not authorized by the mortgage contract or the law.

113.  LPS reported costs and fees to Wells Fargo, which Wells Fargo assessed against Tara and her property for the wrongful debt collection actions.

### c. Violation of  § 1692k

114.  LPS and Wells Fargo violated § 1692k by failing to maintain procedures reasonably adapted to avoid improper debt collection practices.

115. LPS and Wells Fargo systemized its process of monitoring mortgage payments, but failed to safeguard against premature possession of properties before foreclosure or obtaining a valid court order for possession.

116. Wells Fargo had a practice whereby "property servicers" such as LPS and Asons were tasked to perform services prematurely or automatically after a borrower became delinquent on mortgage payments.

117. LPS automatically arranged to provide property services to homes at risk of foreclosure without verifying whether a foreclosure or rightful transfer of possession had taken place.

WHEREFORE, Plaintiff TARA McGUIGAN BYWATER respectfully requests that this Honorable Court:

     a. Enter judgment in her favor and against LPS and Wells Fargo;

     b. Declare that the practices complained of herein violate the aforementioned statutes and regulations;

     c. Award Tara statutory, actual, and punitive damages, in an amount to be determined at trial;

     d. Order the deletion of all adverse credit reporting related to the loan;

     e. Award Tara costs and reasonable attorney fees under 15 U.S.C. § 1692k; and

     f. Award any other relief as this Honorable Court deems just and appropriate.

June 13, 2013                           Respectfully submitted on behalf of

Plaintiff Tara McGuigan Bywater,

   /s/Mara A. Baltabols

Mara A. Baltabols

Attorney for Plaintiff

Sulaiman Law Group, Ltd.
Ross M. Zambon
ARDC # 6294149
Mara A. Baltabols
ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523
(630) 575-8181
pleadings@sulaimanlaw.com