IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARA McGUIGAN BYWATER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 13 C 4415 |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| LPS FIELD SERVICES, INC., ) | |
| and A-SON'S CONSTRUCTION, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tara McGuigan Bywater has sued Wells Fargo Bank, N.A., as well as LPS Field Services, Inc. and A-Son's Construction, Inc., two companies that provide "home preservation" services to mortgage lenders. Plaintiff has brought claims against all of the defendants under the federal Fair Debt Collection Practices Act (FDCPA) and Illinois law, including claims for trespass to real property, trespass to personal property/chattels, conversion, intrusion upon seclusion, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). Plaintiff has also brought a breach of contract claim against Wells Fargo. All three defendants have moved to dismiss at least some of the claims against them.

### Background

On March 20, 2009, plaintiff obtained a $168,144 loan from Franklin American Mortgage Company to purchase a home in Plainfield, Illinois. The loan was secured by

a mortgage on the home. At a later date, the mortgage was assigned to Wells Fargo. Wells Fargo has attached to its motion to dismiss documentation indicating that the assignment took place in April 2012. *See* Wells Fargo Ex. 2 at 1.

Plaintiff alleges that she and her daughters "exclusively resided" in the home from April 2009 to January 2013, Compl. ¶ 13, and that in February 2013, she and her daughters "slowly began moving" to the home of her then-fiancé and now-husband (they married in March 2013). *Id.* ¶¶ 13 & 26. Plaintiff says that she contacted a real estate agent to list the property for sale in February 2013 and that she was "regularly present" at the property in February and March 2013. *Id.* ¶¶ 27-28.

The complaint does not contain any allegations relating to whether or when plaintiff defaulted on her mortgage loan. Wells Fargo contends that plaintiff defaulted on her loan in December 2012. *See* Wells Fargo Mem. at 2. Plaintiff appears to agree. She contends, however, that she stopped making payments because when she called Wells Fargo about selling the home, Wells Fargo advised that it could help with a short sale only if she was in default and suggested that she skip two or three payments. *See* Pl.'s Resp. at 5. (These allegations are not yet in plaintiff's complaint.)

Plaintiff alleges that in February or March 2013, Wells Fargo instructed LPS, which provides "home preservation services" to mortgage lenders, Compl. ¶ 8, to investigate, winterize, change the locks, and perform other tasks on the property. LPS then arranged for a number of subcontractors to bid for the opportunity to perform these tasks. A-Son's, which also provides "home preservation services" to mortgage lenders, won the bid. *Id.* ¶¶ 10 & 16.

Plaintiff alleges that on March 2, 2013, A-Son's forcibly entered the property,

a mortgage on the home. At a later date, the mortgage was assigned to Wells Fargo. Wells Fargo has attached to its motion to dismiss documentation indicating that the assignment took place in April 2012. *See* Wells Fargo Ex. 2 at 1.

Plaintiff alleges that she and her daughters "exclusively resided" in the home from April 2009 to January 2013, Compl. ¶ 13, and that in February 2013, she and her daughters "slowly began moving" to the home of her then-fiancé and now-husband (they married in March 2013). *Id.* ¶¶ 13 & 26. Plaintiff says that she contacted a real estate agent to list the property for sale in February 2013 and that she was "regularly present" at the property in February and March 2013. *Id.* ¶¶ 27-28.

The complaint does not contain any allegations relating to whether or when plaintiff defaulted on her mortgage loan. Wells Fargo contends that plaintiff defaulted on her loan in December 2012. *See* Wells Fargo Mem. at 2. Plaintiff appears to agree. She contends, however, that she stopped making payments because when she called Wells Fargo about selling the home, Wells Fargo advised that it could help with a short sale only if she was in default and suggested that she skip two or three payments. *See* Pl.'s Resp. at 5. (These allegations are not yet in plaintiff's complaint.)

Plaintiff alleges that in February or March 2013, Wells Fargo instructed LPS, which provides "home preservation services" to mortgage lenders, Compl. ¶ 8, to investigate, winterize, change the locks, and perform other tasks on the property. LPS then arranged for a number of subcontractors to bid for the opportunity to perform these tasks. A-Son's, which also provides "home preservation services" to mortgage lenders, won the bid. *Id.* ¶¶ 10 & 16.

Plaintiff alleges that on March 2, 2013, A-Son's forcibly entered the property,

changed the locks, and damaged or stole many of her personal items, including jewelry, electronics, and appliances. Plaintiff maintains that none of the defendants contacted her to determine if she still resided at the property or obtained a court order granting them possession or permission to enter the property. Plaintiff states that on March 3, 2013, she learned from a neighbor that there was an unmarked van in the driveway and a work crew on the property. That same day, plaintiff's husband visited the property and reported that the locks had been changed and that there were signs on the premises to contact LPS in case of an emergency.

Plaintiff alleges that she called the LPS number listed on the signs and left a message, which she says was never returned. Plaintiff also reports calling Wells Fargo, which informed her that it would send someone out to the property to investigate and reach out to plaintiff about the locks being changed. Plaintiff claims that she never heard back from Wells Fargo, but she says she later received a call from LPS, which informed her that it would discuss the situation with Wells Fargo. Plaintiff alleges that she made clear to LPS that the property was not in foreclosure and that she was unable to access her belongings within the home. Plaintiff contends that LPS told her to contact Wells Fargo for more information.

Sometime later, plaintiff received new keys to the property in the mail. On March 23, 2013, plaintiff visited the property to meet with her real estate agent. Plaintiff alleges that she found the home ransacked and personal property destroyed.

Plaintiff alleges that she called LPS to report the incident and that LPS denied any wrongdoing, stating it had been "directed to do everything by Wells Fargo." Pl.'s Compl. ¶ 39. On March 26, 2013, plaintiff reported the incident to the Will County

Sheriff's Department.  The next day, Wells Fargo filed a foreclosure lawsuit against plaintiff.  *See Wells Fargo Bank, N.A. v. McGuigan*, No. 13 CH 01261 (Cir. Ct. of Will Cty.).  Plaintiff alleges that defendants have refused to pay her the reasonable value of the damaged property or to return, replace, or reimburse her for her stolen personal items.

## Discussion

All of the defendants have moved to dismiss at least some of the claims against them.  In considering the motions, the Court accepts all well-pleaded allegations in plaintiff's complaint as true and views those allegations in the light most favorable to plaintiff.  *See, e.g., Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).  "When ruling on a motion to dismiss, the court must review the complaint to determine whether it contains 'enough facts to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged."  *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  In other words, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level . . . . This means that the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief."  *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632-33 (7th Cir. 2013) (internal quotations omitted).

**A.    ICFA claim (Count 5)**

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices."  *Robinson v. Toyota Motor Credit Corp.*,

4

201 Ill. 2d 403, 416-17, 775 N.E.2d 951, 960 (2002). It provides that

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . ., in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

A plaintiff may sue under the ICFA for deceptive conduct or for unfair conduct; these are different sorts of claims. In federal court, an ICFA claim for deceptive conduct is treated as a claim of fraud to which Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). By contrast, "a cause of action for unfair practices under the [Illinois] Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). This means that plaintiff asserting an ICFA unfair practices claim "need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative." *Id.*

To qualify as an unfair practice violative of the ICFA, conduct must: "1) violate public policy; 2) be so oppressive that the consumer has little choice but to submit; and 3) cause consumers substantial injury." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). The second of these elements requires the defendant's act to be "immoral, unethical, oppressive, or unscrupulous." *Windy City Metal Fabricators*, 536 F.3d at 669

5

(citing *Robinson*, 201 Ill. 2d at 417-18, 775 N.E.2d at 961).

The Seventh Circuit has described the elements of a claim under the ICFA as follows:

> "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir.2010), citing *Robinson,* 775 N.E.2d at 960. In addition, "a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Id.* at 935.

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). Requiring proof that the defendant intended for the plaintiff to rely on a deceptive act is easy to understand. Requiring proof of "reliance" on an unfair practice, however, is a bit of an odd fit. *Wigod* cites *Siegel* for this, and *Siegel* cites the Illinois Supreme Court's decision in *Robinson*. *Robinson*, however, does not put it quite that way. Here is what the cited passage in *Robinson* actually says; it does not require proof of "intent to rely" on "unfair" conduct:

> The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. Recovery may be had for unfair as well as deceptive conduct.

*Robinson*, 201 Ill. 2d at 417, 775 N.E.2d at 960. Regardless, the Seventh Circuit's formulation is binding on this Court, so the Court will follow it.

Defendants argue that plaintiff has failed to allege the elements of an unfair conduct claim, with particular focus on the element of intended reliance. LPS, for example, argues that "[t]here is no claim that LPS FS, through A-Son's, intended to bully Plaintiff into abandoning the property or agreeing to a quicker foreclosure of

6

Plaintiff's home." LPS Mem. at 8-9. Without conceding that is the only conceivable way in which defendants could be claimed to have intended reliance by plaintiff, the Court disagrees with this argument. The allegations before this Court are quite similar to those in *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817 (N.D. Ill. 2013). In *Hill*, the plaintiff alleged that LPS, acting on behalf of Wells Fargo, repeatedly entered the plaintiff's home, replaced the locks, vandalized the home to the point of making it inhabitable, and stole some of the plaintiff's personal property. *Id.* at 826. Judge Gary Feinerman stated that he "must conclude at this stage that LPS was hoping that its illegal conduct would ultimately drive the Hills out of their home so that Wells Fargo could take possession without having to go through the potentially lengthy foreclosure process . . . ." *Id.* He concluded that a reasonable fact finder could determine that the defendant's purported conduct violated Illinois public policy, because it reflected an attempt to circumvent the foreclosure process provided by state law. *Id.* at 827.

The Court finds Judge Feinerman's analysis persuasive. A plausible inference may be drawn that by forcing plaintiff out of her home, the defendants believed they could buffalo her into giving up without having to go through foreclosure. In short, plaintiff has adequately alleged the element of intended reliance. And for the reasons described in *Hill*, plaintiff has also adequately alleged an unfair act—self-help to take possession of mortgaged property outside the judicial process mandated by state law— and it goes without saying that this alleged course of conduct involves commerce.

A-Son's argues that plaintiff cannot state a claim under the ICFA because A-Son's acted *pursuant* to Illinois law rather than contrary to law. In this regard, A-Son's notes that the Illinois legislature has recognized the benefits of securing abandoned

7

properties. *See* A-Son's Reply at 3 (citing 735 ILCS 5/15-1108). The statute that A-Son's cites, however, advocates "an expedited foreclosure process for abandoned residential property," not preemption of the judicial foreclosure process via self-help. In any event, plaintiff's complaint, fairly read, alleges that the property was not abandoned. Given the standard that applies to a motion to dismiss for failure to state a claim, A-Son's' argument does not carry the day.

Because Count 5 states a viable ICFA unfair conduct claim, the Court need not assess whether it also states a viable ICFA deceptive practices claim.

**B.    FDCPA claim (Counts 7 and 8)**

The FDCPA is intended "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692a(e). The statute imposes obligations and prohibitions on "debt collector[s]," generally defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. § 1692a(6).

Plaintiff has asserted FDCPA claims against all of the defendants. In Count 8 of her complaint, she alleges that LPS engaged in abusive conduct violative of 15 U.S.C. §1692d by taking possession of the property and taking and damaging her personal property in order to collect the debt owed to Wells Fargo; LPS and Wells Fargo violated various FDCPA provisions by assessing fees against plaintiff that were unauthorized by her contract or the law; and that both violated 15 U.S.C. § 1692k by failing to maintain procedures to avoid taking possession of mortgaged properties before the law authorizes it. Compl. ¶¶ 111-17. Plaintiff contends that LPS acted on Wells Fargo's

8

behalf. In Count 7, plaintiff alleges that A-Son's violated the FDCPA by falsely claiming that it had a right to enter the property and change the locks; engaging in abusive conduct by evicting plaintiff and damaging and taking her property; using unfair means, specifically self-help, to collect plaintiff's debt; and failing to maintain procedures to avoid taking possession of mortgaged properties before the law authorizes it. *See id.* ¶¶ 98-105 (citing 15 U.S.C. §§ 1692e, 1692d, 1692f & 1692k).

### 1. Wells Fargo

Wells Fargo argues that it cannot be held liable under the FDCPA because it does not qualify as a debt collector. As indicated earlier, the FDCPA's provisions generally apply only to debt collectors. *See Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).

Although Wells Fargo was the assignee of the debt, not its originator, it does not thereby qualify as a debt collector under the FDCPA. As indicated earlier, the evidence reflects that plaintiff's note and mortgage were assigned to Wells Fargo in April 2012, approximately nine months before plaintiff evidently defaulted on the loan. "[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). *See also Ruth v. Triumph P'ships*, 577 F.3d 790, 796-97 (7th Cir. 2009). In short, Wells Fargo is a creditor, not a debt collector.

Plaintiff's allegations that LPS and A-Son's were acting on Wells Fargo's behalf do not render Wells Fargo vicariously liable under the FDCPA for those entities' actions. Though the Seventh Circuit has not addressed the point directly, the Second Circuit has

9

said that the FDCPA "does not create backdoor vicarious liability for creditors simply because the collection agencies they hire to collect their debts engage in deceptive practices." *Vincent v. The Money Store*, 736 F.3d 88, 99 (2d Cir. 2013). The weight of authority appears to be in accord. *See, e.g., London v. Gums*, No. H-12-3011, 2014 WL 546914, at 85 (S.D. Tex. Feb. 10, 2014) (collecting cases).

For these reasons, plaintiff has not stated a claim against Wells Fargo under the FDCPA.

### 2. LPS and A-Son's

LPS and A-Son's argue that they likewise cannot be held liable under the FDCPA because plaintiff has not adequately alleged that they are debt collectors. As indicated earlier, the FDCPA's requirements apply only to "debt collectors," namely those "who regularly collect[ ] or attempt[ ] to collect" debts owed to others or whose business's principal purpose is the collection of debts. *Id.* § 1692a(6).

One of plaintiffs' allegations against LPS and A-Son's, however, permits plaintiff to take advantage of a broader definition of "debt collector." Under 15 U.S.C. § 1692f(6), it is an "unfair or unconscionable" practice violative of the FDCPA to take or threaten "nonjudicial action to effect dispossession or disablement of property," if, among other things, there is no present right to possession of the property through an enforceable security interest. Section 1692a(6) expands the definition of "debt collector" for purposes of liability under section 1692f(6); for purposes of that subsection, a debt collector "also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.* § 1692a(6).

The allegations in plaintiff's complaint are sufficient to bring LPS and A-Son's within this expanded definition for purposes of liability under subsection 1692f(6). Plaintiff alleges that A-Son's, acting in concert with LPS, changed the locks on the home and removed some of plaintiff's personal property, and also destroyed or damaged other personal property, before any foreclosure case had even been filed, let alone proceeded to judgment. That activity, which plaintiff alleges was part of an effort to evict her and her family from the home, is within the scope of what subsection 1692f(6) prohibits. *See, e.g., Frazier v. US Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *10 (N.D. Ill. Mar. 29, 2013); *Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 WL 3260449, at *1 (N.D. Ill. Aug. 8, 2012); *Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, at *4 (N.D. Ill. Sept. 26, 2005). *See generally* 735 ILCS 5/15-1701 (absent a court order, mortgagor is entitled to possession until judgment of foreclosure is entered). The complaint alleges that both LPS and A-Son's are in the business of securing properties for mortgage lenders in connection with foreclosures, *see* Compl. ¶¶ 9, 10, 14-15 & 91-94, which is sufficient to bring them within the scope of section 1692a(6)'s expanded definition of a "debt collector."

Finally, the Court overrules, at least for purposes of the present motion, defendants' reliance on 15 U.S.C. § 1692a(6)(F)(i), which provides that the term "debt collector" does not include a person attempting to collect a debt owed to another "to the extent such activity . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." The meaning and scope of this exception is debatable, but even though plaintiff alleges a principal-agent (fiduciary) relationship between Wells Fargo and LPS / A-Son's, they are claimed to have acted pursuant to a contractual duty to

secure plaintiff's home, and thus their alleged actions were not "incidental to a bona fide fiduciary obligation." *See Jacobini v. JP Morgan Chase, N.A.*, No. 6:11-cv-231-Orl, 2012 WL 252437, at *3 (M.D. Fla. Jan. 26, 2012).

Even if the fiduciary relationship requirement in section 1692a(6)(F)(i) is met, it does not appear that LPS's conduct towards plaintiff was "incidental" to its relationship with Wells Fargo or that the conduct of A-Son's toward plaintiff was incidental to its relationship with LPS. "The 'incidental to' requirement means that the collection activity must not be 'central to' the fiduciary relationship." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1034 (9th Cir. 2009) (citing *Wilson v. Draper & Goldberg*, 443 F.3d 373, 377 (4th Cir. 2006)). Plaintiff has alleged facts giving rise to a reasonable inference that the defendants' conduct towards plaintiff was indeed central to their relationships with the parties with which they had contracted.

Because plaintiff has adequately alleged that LPS and A-Son's violated section 1692f(6), the Court need not address at this time the contention that plaintiff's other FDCPA allegations do not adequately allege violations of the statute.

**C.     Tort claims (Counts 1, 2, 3 and 4)**

Although plaintiff has brought tort claims against all of the defendants, only LPS has moved to dismiss them. Plaintiff has accused LPS of trespass to real property, trespass to personal property/chattels, conversion, and intrusion upon seclusion. LPS asserts that plaintiff has alleged only economic loss, barring her from recovery under the *Moorman* doctrine. The Court disagrees.

*Moorman Mfg. Co. v. Nat'l Tank Co.,* 91 Ill. 2d 69, 435 N.E.2d 443 (1982), was a products liability case, but its holding has since been applied to a variety of situations.

The court noted that "[e]conomic loss has been defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* at 82, 435 N.E.2d at 449 (internal quotations omitted).

Plaintiff's claim for damages arising from the trespass does not fall, or at least does not fall primarily, into any of these categories. Rather, plaintiff seeks to recover for loss of and physical damage to real and personal property, as well as emotional distress. *See* Compl. ¶¶ 17-19, 59-60. That does not qualify as economic loss. *See, e.g., Lyons v. State Farm Fire and Cas. Co.*, 349 Ill. App. 3d 404, 411, 811 N.E.2d 718, 725 (2004).

### D. Breach of contract claim (Count 6)

Finally, plaintiff has brought a breach of contract claim against Wells Fargo. Plaintiff argues that Wells Fargo breached the express terms of the mortgage contract by taking possession of the property and failing to take reasonable steps to determine whether the property was occupied and breached its duty of good faith and fair dealing by engaging in torts and deceptive practices as alleged elsewhere in the complaint. *See* Compl. ¶¶ 83, 85-87.

Wells Fargo counters that plaintiff cannot prevail on her breach of contract claim because she has failed to allege adequately that she substantially complied with the mortgage contract. In particular, Wells Fargo argues that it is clear from the complaint in the foreclosure case against plaintiff that she was in breach of her obligations under the mortgage at the relevant time. *See* Wells Fargo Mem. at 6. Wells Fargo also contends that Illinois courts do not ordinarily recognize separate claims for breach of

13

good faith and fair dealing in disputes concerning mortgage contracts.

Under Illinois law, the essential elements of a breach of contract claim are: "(i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff." *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27, 984 N.E.2d 132, 143 (2013). At this stage of the case, plaintiff does not have to prove that she was in compliance with the contract's terms; rather, she simply has to allege it adequately. Her allegation in the complaint that she "substantially complied with the terms and conditions of the subject note and mortgage" is sufficient; there is nothing more for her to allege. Compl. ¶ 82. Wells Fargo's citation of the allegation in the state court foreclosure case that plaintiff had missed payments does not defeat this allegation, as it involves material that is outside the present complaint.

Wells Fargo also challenges the adequacy of plaintiff's allegations of breach of good faith. Illinois law recognizes that a party to a contract that does not properly exercise contractual discretion breaches the implied covenant of good faith and fair dealing that exists in every contract. *See, e.g., Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 165, 815 N.E.2d 911, 916 (2004). Plaintiff does not identify in her complaint or even in her response to the motion to dismiss the nature of the contractual discretion that she contends Wells Fargo failed to exercise in good faith. As a result, her breach of good faith allegation would not be sufficient standing alone to state a claim for breach of contract. Count 6 survives, however, based on plaintiff's sufficient allegation of a breach of express contractual terms.

**Conclusion**

For the foregoing reasons, the Court dismisses the FDCPA claim against defendant Wells Fargo Bank contained in Count 8 but otherwise denies defendants' motions to dismiss [docket nos. 40, 43, and 49]. Defendants are directed to answer all remaining claims by no later than April 7, 2014.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 24, 2014